IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CHRISTINA STEGEMANN, on behalf )
of GANNETT CO., INC. 401(k) )
SAVINGS PLAN and all other similarly )
situated, )
)
     Plaintiff, )
)
v. )     Civil Action No. 1:18-cv-325 (AJT/JFA)
)
GANNETT CO., INC *et al.*, )
)
)
     Defendants. )
)

## <u>MEMORANDUM OPINION & ORDER</u>

In this ERISA breach of fiduciary duty case, Plaintiff Christina Stegemann has moved for

class certification [Doc. No. 116] and Defendants Gannett Co., Inc. and Gannett Benefit Plans

Committee ("Defendants") have moved for summary judgment [Doc. No. 123]. In opposing class

certification, Defendants argue that Plaintiff fails to satisfy (1) Rule 23(a)'s typicality requirement

due to ERISA Section 404(c), 29 U.S.C. § 1104(c)'s safe harbor; (2) Rule 23(b)(1)'s requirements

due the presence of monetary damages; and (3) Rule 23(b)(3)'s "predominance" requirement. As

for the merits of the case, Defendants contend that they are entitled to summary judgment on the

grounds that (1) Plaintiff's claims are precluded by § 404(c)'s safe harbor provision; and (2) the

timing and manner of the closure of the TEGNA Stock Fund was reasonable, *i.e.* prudent.

For the foregoing reasons, Plaintiff's Motion for Class Certification [Doc. No. 116] is

**GRANTED;** and Defendants' Motion for Summary Judgment [Doc. No. 123] is **DENIED.**

## I.   BACKGROUND

On August 5, 2014, TEGNA, INC. ("TEGNA"), previously named Gannett Co., Inc. ("Old Gannett"), and its Board of Directors announced the planned spinoff of its publishing segment into a new, independent, publicly-traded company, which would take the Gannett name. [Am. Compl.], ¶ 20. Before the spinoff, the combined company owned approximately 93 newspapers as well as 46 television stations and digital properties such as the website Cars.com. [Doc. No. 124], UF ¶ 1.

On June 29, 2015, TEGNA completed the spinoff, creating two new separate, independent companies: (1) TEGNA and Defendant Gannett Co., Inc. ("New Gannett" or "Gannet")). [Am. Compl.], ¶ 21; [Doc. No. 124], UF ¶ 2.[1] The two companies have separate retirement plans. [Doc. No. 117], at 1. The New Gannett 401(k) Savings Plan ("the Plan") is a "defined contribution plan" or "individual account plan" within the meaning of ERISA Section 3(34), 29 U.S.C. § 1002(34). [Doc. No. 124], UF ¶ 1. The Plan is for New Gannett's employees, not TEGNA's. [Doc. No. 117], at 1. The New Gannett Benefit Plans Committee (the "Committee") administers the Plan as the named fiduciary. [Doc. No. 124], UF ¶ 1.

On June 10, 2015, in anticipation of the spinoff, the Plan was restated with New Gannett serving as the Plan sponsor effective as of spinoff date. [*Id.*], UF ¶ 4. The Plan referred to an Employee Matters Agreement ("EMA") between TEGNA and Gannett. [*Id.*], UF ¶ 5. The EMA states that it can be used as an interpretive tool in certain transactions. [*Id.*]; *see also* [Doc. No. 131], RUF ¶ 5. The Plan's Summary Plan Description states, in part, that:

> The Plan is intended to qualify as an ERISA Section 404(c) Plan. This means that you are solely responsible for your investment choices. The Company, Plan Administrator and Plan Trustee are not responsible for the consequences of your investment elections and have no responsibility or duty to approve, review or monitor the investment choices you make.

---

[1] TEGNA is a broadcasting and digital company while Gannett is a publishing company with affiliated digital assets. [Am. Compl.], ¶ 21.

2

[Doc. No. 124-19], Ex. 19 at 12; [Doc. No. 124], UF ¶ 22. Plaintiff was permitted to invest money across numerous mutual funds and other investment vehicles. [Doc. No. 124], UF ¶ 23. The Plan offered to Plan participants, including Plaintiff, a brokerage window allowing Plaintiffs to invest in numerous different mutual funds. [*Id.*] At times both before and during the Class Period, Plaintiff reallocated assets invested in funds administered by the Plan. [*Id.*], UF ¶ 24.

Before the spinoff, employees of Old Gannett were permitted to invest their retirement savings in a single-stock fund of Old Gannett company stock. [*Id.*], UF ¶ 7; [Doc. No. 131], RUF ¶ 7. Old Gannett matched employees' contribution with company stock. [*Id.*] Plaintiff Christina Stegemann is a Plan participant and chose to invest some of her 401(k) assets in the Old Gannett stock fund. [Doc. No. 124], UF ¶ 8; [Doc. No. 131], RUF ¶ 9.  As laid out in the Plan's governing document, following the spinoff, participants who no longer worked for TEGNA, including employees of New Gannett, could not continue to add to the Old Gannett single-stock fund, now known as the "TEGNA Stock Fund," which would be a frozen investment. [Doc. No. 124], UF ¶¶ 4, 9. Accordingly, while participants were free to sell their shares, they could not buy additional stock in TEGNA, and any dividends paid by TEGNA could not be reinvested in TEGNA stock. [*Id.*]

Although Plan participants could no longer invest in the TEGNA Stock Fund after the spinoff, they had at least 29 different investment options during the proposed class period. [Doc. No. 124], UF ¶ 6. Those options fell into six categories: (i) International Equity, (ii) Domestic Equity, (iii) Client Specific Funds, (iv) Balanced, (v) Bond, and (vi) Short-Term Reserves. [*Id.*] Plaintiff understood that she was free to sell her holdings in the TEGNA Stock Fund at the time of the spinoff but chose not to after hearing that other individuals were keeping their TEGNA stock. [*Id.*], UF ¶ 9. Rather, Plaintiff maintained her holdings in the TEGNA Stock Fund until June 25,

2018, at which time she sold her holdings in that fund and reinvested the proceeds in the Vanguard Total Stock Market Index Fund. [*Id.*], UF ¶ 20. Before and throughout the class period, Defendants warned Plan participants, including Plaintiff, that the TEGNA Stock Fund presented a riskier investment. [*Id.*], UF ¶ 10; [Doc. No. 124-1], Ex. 1-6 at 2 ("91% of your portfolio is invested in company stock. A heavy concentration in one company stock may increase the risk of your investments."); [Doc. No. 124-17], Ex. 17 ("Because Gannet Stock Fund and TEGNA Stock Fund concentrate on a single stock, they are considered riskier than a diversified stock fund.").

With respect to the closure of the TEGNA Stock Fund, the EMA stated, in part, that "all outstanding investments" in the TEGNA Stock Fund "shall be liquidated and reinvested in other investment funds . . . on such dates and in accordance with such procedures as are determined by the administrator" of the fund. [*Id.*], UF ¶ 5; [Doc. No. 131], RUF ¶ 5; [Doc. No. 124-18], at ¶ 5.03(g); and the Committee understood that the TEGNA Stock Fund would be eliminated at some point in the future. [Doc. No. 124], UF ¶ 15. In 2016, following TEGNA's announcement that Cars.com would be spun off, the Committee created a subcommittee to investigate the possible sunsetting of the TEGNA Stock Fund and a separate single-stock fund of Cars.com stock. [Doc. No. 124], UF ¶ 15.

On May 19, 2017, a subcommittee of the Committee recommended hiring Evercore as an independent fiduciary to supervise the sunsetting of the TEGNA and Cars.com stock funds. [*Id.*], UF ¶ 16. On June 6, 2017, the subcommittee discussed the TEGNA and Cars.com funds with Evercore. [*Id.*] Following that meeting, the subcommittee recommended sunsetting those two funds over a 12-month period. [*Id.*] On June 8, 2017, the Committee followed the subcommittee's recommendation and decided to close the TEGNA Stock fund with a 12-month sunset period. [*Id.*], UF ¶ 17. The Committee announced the sunset to Plan participants in a letter dated July 31, 2017.

[*Id.*], UF ¶ 18. The TEGNA Stock Fund was finally closed on August 23, 2018 after the remaining assets were liquidated and reinvested in accordance with the sunset plan. [*Id.*], UF ¶ 21.

## II.    LEGAL PRINCIPLES

### A.    Summary Judgement

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

## B. Class Certification

"The class-action device, which allows a representative party to prosecute his own claims and the claims of those who present similar issues, is an exception to the general rule that a party in federal court may vindicate only his own interests." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 318 (4th Cir. 2006) (citation omitted). Thus, to proceed under this exception, a court must determine that the class action mechanism "protect[s] both the rights of the absent plaintiffs" and the "right of the defendant to present facts or raise defenses that are particular to individual class members." *Id.*

Class certification is governed by Federal Rule of Civil Procedure 23. Under Rule 23(c)(1)(A), "[a]t an early practicable time after a person sues . . . as a class representative, the [district] court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). "A district court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23." *Thorn*, 445 F.3d at 317 (quoting *Lienhart v. Dryvit Sys. Inc.*, 255 F.3d 138, 146 (4th Cir. 2001)).

To obtain certification, a movant must first satisfy the threshold requirements contained in Rule 23(a), which include: (1) "numerosity"—that the class is so numerous that joinder of all members would be impracticable; (2) "commonality"—that questions of law or fact are common to the class; (3) "typicality"—that the claims or defenses of the representative party are typical of those of the class; and (4) "adequacy"—that the representative party fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a); *EQT Prod. Co. v. Adair* ("*EQT*"), 764 F.3d 347, 357 (4th Cir. 2014) (citation omitted); *see also Souter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 196 (E.D. Va. 2015) ("Of the four explicit requirements, the first two factors (numerosity and commonality) represent necessary class characteristics and the second two factors

6

(typicality and adequacy) represent necessary attributes for the class representative.") Notably, the final three requirements of Rule 23(a) "tend to merge, with commonality and typicality 'serving as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998) (internal quotations omitted) (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

In addition to Rule 23(a)'s requirements, Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action must define the class and the class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(1)(B); *see also Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir. 1976) ("The definition of the class is an essential prerequisite to maintaining a class action."). For that reason, it must be "administratively feasible" for the Court to "ascertain" the members of the proposed class. *EQT*, 764 F.3d at 358 ("A class cannot be certified unless a court can readily identify the class members in reference to objective criteria."); *see also Thomas v. FTS USA, LLC*, 312 F.R.D. 407, 416 (E.D. Va. 2016) ("The court should not certify a class unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.") (quoting *Solo v. Bausch & Lomb Inc.*, 2009 WL 4287706, at *4 (D.S.C. Sept. 25, 2009)). And although "plaintiffs need not be able to identify every class member at the time of certification," if "class members are impossible to identify without extensive individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *EQT*, 764 F.3d at 358 (citations omitted).

7

Finally, the movant seeking class certification must also demonstrate that the proposed class fits into one of the three categories of actions identified in Rule 23(b). *See EQT*, 764 F.3d at 357; *George v. Duke Energy Retirement Cash Balance Plan*, 259 F.R.D. 225, 232 (D.S.C. 2009).

As reflected by these demanding standards, Rule 23 "does not set forth a mere pleading standard[,]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); and courts are not required to accept a plaintiffs' pleadings, *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004). Rather, the movant must affirmatively present "substantial evidence" that the putative class complies with Rule 23. *See Brown v. Nucor Corp.*, 785 F.3d 895, 931 (4th Cir. 2015). And in that regard, district courts have "an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *Dukes*, 564 U.S. at 350 (citing *Falcon*, 457 U.S. at 161). In discharge of that obligation, the district court may need to "probe behind the pleadings before coming to rest on the certification question," *id.*, and although the likelihood of the plaintiffs' success on the merits is not relevant to the issue of whether certification is proper, the court may conduct an inquiry into the merits and evidence "to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied[.]" *Amgen Inc v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013); *accord Nucor*, 785 F.3d at 903; *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 27-28 (2013) (clarifying that the "rigorous analysis" required for class certification reaches not only to issues of liability, but also to damages and causation). Ultimately, it is the movant's burden to demonstrate compliance with Rule 23 by a preponderance of the evidence. *See EQT*, 764 F.3d at 368.

## III.   ANALYSIS

Defendants have moved for summary judgment and have opposed class certification based on their Section 404(c) safe harbor defense and also on the grounds that as a matter of law Plaintiff

has failed to present sufficient evidence that they, the Defendants, acted imprudently with respect to the TEGNA Stock Fund. Plaintiff contends that Defendants' Section 404(c) defense has no application to its breach of fiduciary duty claim, there are disputed factual issues that preclude summary judgment in Defendants' favor on her fiduciary duty breach claim, and that a class should be certified under Rule 23(b)(1).

### A. Defendants' Section 404(c) Safe Harbor Defense

The threshold issue at the heart of both Plaintiff's Motion for Class Certification [Doc. No. 116] and Defendants' Motion for Summary Judgment [Doc. No. 123] is the applicability of ERISA Section 404(c), 29 U.S.C. § 1104(c). The present dispute over 404(c)'s applicability reduces to whether Plaintiff's independent, deliberate decision to leave untouched for several years following the spinoff her investments in the TEGNA Stock Fund—an allegedly imprudent investment option— can be subject to Defendants' § 404(c) safe harbor affirmative defense.

Section 404(c) states, in part, that

> In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, *if a participant or beneficiary exercises control over the assets in his account* . . . such participant or beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and no person who is otherwise a fiduciary *shall be liable under this part for any loss*, or by reason of any breach, *which results from such participant's or beneficiary's exercise of control*.

29 U.S.C. § 1104(c)(1)(A) (emphasis added). Section 404(c) serves as a "safe harbor provision," *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 n.3 (4th Cir. 2007), and is intended to "relieve the fiduciary of responsibility for choices made by someone beyond its control," *Howell v. Motorola, Inc.*, 633 F.3d 552, 567 (7th Cir. 2011). Specifically, the safe harbor protects "fiduciaries against losses that arise from plan participants' idiosyncratic or unwise allocation decisions." *See* Brief for United States as Amicus Curiae at 14, *Gannett Co., Inc. v. Quatrone*, 142 S. Ct. 707 (2021) (No. 20-609), 2021 WL 5235848 (citing 29 C.F.R. 2550.404c-1(f)(5)); *see also*

*Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 309 (5th Cir. 2007) ("[Section 404(c)] places responsibility for the success or failure of a participant's investments on his own choices among the portfolio offered in the plan."). For example, the safe harbor would shield a fiduciary if

> A participant, P, independently exercises control over assets in his individual account plan by directing a plan fiduciary, F, to invest 100% of his account balance in a single stock. P is not a fiduciary with respect to the plan by reason of his exercise of control and F will not be liable for any losses that necessarily result [from] P's investment instruction.

29 C.F.R. 2550.404c-1(f)(5); *see also Stegemann*, 970 F.3d at 481 ("[I]f the participant instructs the plan trustee to invest the full balance of his account in, *e.g.*, a single stock, the trustee is not to be liable for any loss because . . . the investment does not meet the prudent man standards.") (quoting *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 356 n.5 (4th Cir. 2014) ("*Tatum II*")). Accordingly, Section 404(c) absolves a fiduciary of liability for "any loss or fiduciary breach that is the direct and necessary result of that participant's or beneficiary's exercise of control." *Howell*, 633 F.3d at 567 (quoting 29 C.F.R. § 2550.404c–1(d)(2)(i)).

Plaintiff argues that the safe harbor provision does not shield Defendants from liability due to their decision to offer and maintain the TEGNA Stock Fund in breach of their duty to diversify and monitor investment options. [Doc. No. 131], at 13-16. Thus, according to Plaintiffs, Defendants must first prove that their maintaining and not terminating earlier the TEGNA Stock Fund was in and of itself prudent before it can rely on Section 404(c).

Relying centrally on the Fourth Circuit's earlier pronouncements in this case that "fiduciaries should not be liable for participant autonomy," *Stegemann v. Gannett Co., Inc.*, 970 F.3d 465, 481 (4th Cir. 2020), Defendants contend that while a "fiduciary is not freed of the 'duty to act as a prudent man,'" a fiduciary "is nonetheless 'not liable for any loss' resulting from a participant's autonomy." [Doc. No. 133], at 5 (quoting *Stegemann*, 970 F.3d at 481-82 n.12). In sum, Defendants contend that under the Fourth Circuit's decision in this case they would be

10

absolved from any liability for any alleged fiduciary breach so long as they establish that the Plan satisfies the "intricate requirements of 29 C.F.R. § 2550.404c-1," *i.e.*, the "twenty-five requirements . . . [for] invoking the § 404(c) safe harbor." *Stegemann*, 970 F.3d at 482. *See* [Doc. No. 124], at 9-10 ("[T]he Fourth Circuit held that § 404(c) is a valid defense even where a fiduciary has allegedly allowed an undiversified single stock as an investment option.").[2] Based on this reading, Defendants argue that Section 404(c) clearly applies to Plaintiff's claims because she exercised control by making the deliberate decision to remain invested in the TEGNA Stock Fund for nearly 3 years following the spinoff. [Doc. No. 124], at 8-10; [Doc. No. 133], at 6-8. Moreover, Defendants contend, if the Fourth Circuit had agreed with Plaintiff's position, "the entire discussion in Section III.D.ii of [the Fourth Circuit's] opinion would have been unnecessary." [Doc. No. 133], at 3. Defendants further argue that Plaintiff's position is illogical; if Defendants must first prove that offering the TEGNA Stock Fund was prudent then the §404(c) defense is essentially useless in this scenario. [*Id.*], at 5 ("[I]f the fund is prudent, there would be no breach in the first place, and no need to invoke an affirmative defense."). Defendants also point to the those portions of the applicable regulations, specifically subsection f(5), that protects a fiduciary from any losses stemming from a participant's decision to "invest 100% of his account balance in a single stock." 29 C.F.R. 2550.404c-1(f)(5).

On appeal, the Fourth Circuit reversed this Court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) (which was based on the Supreme Court's holding in *Fifth Third Bank Corp. v Dudenhoeffer*, 134 S. Ct. 2459) and in its opinion the Appellate Court referenced the Fifth

---

[2] In further support of their reading of the Fourth Circuit's decision, Defendants contend that as reflected in her appellate and *certiorari* briefing, Plaintiff understood the Fourth Circuit's ruling as they do. [*Id.*], at 9 ("On appeal from this Court's dismissal of the complaint, Plaintiff argued that 'it doesn't matter if Defendants can prove the [§ 404(c)] defense or not. It simply does not apply to Plaintiff's claims."), 10 ("In opposing Defendants' unsuccessful petition for certiorari to the U.S. Supreme Court, Plaintiff admitted that the Fourth Circuit had rejected her argument, 'leaving Gannett free to assert its [§ 404(c) defense] on remand.'").

Circuit's opinion in *Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*, 960 F.3d 190, 199 (5th Cir. 2020). In *Schweitzer*, the Fifth Circuit—while not referencing Section 404(c) or the safe harbor defense—held that a plaintiff failed to state a claim for breach of the duty of prudence when the fiduciary froze the single-stock fund to new investments following a spinoff, allowed participants to divest at any time, and provided statutorily mandated warnings about the benefits of diversification. The Fifth Circuit concluded that those plan participants "chose to retain the ConocoPhillips Funds for over two years, balancing the risk of a want of portfolio diversity against the rising values of ConocoPhillips stock—a risk against which the Fiduciaries urged caution" and therefore could not seek legal recourse for the plan's fiduciaries failure to "second guess" that decision. *Id.* ("They cannot enjoy their autonomy and now blame the Fiduciaries for declining to second guess that judgment."). The Fourth Circuit also specifically framed its § 404(c) discussion as "the appropriate way to account for participant choice (if there was such choice) when a fiduciary is sued for a breach of a duty that caused a loss to the plan, *but some of the loss may have been caused by participants.*" *Id.* at 481 (emphasis added).

Defendants advance strong arguments based on the Fourth Circuit's opinion, but the Court does not read the Fourth Circuit's decision so broadly as to hold that as a matter of law Section 404(c) insulates Defendants from liability based on the alleged breach of the fiduciary duties of prudence and diversity. As an initial matter, Defendants' position is directly contrary to the applicable regulation promulgated by the Department of Labor, which explicitly states that the safe harbor provision "does not serve to relieve a fiduciary from its duty to *prudently select and monitor* any . . . designated investment alternative offered under the plan." *Fiduciary Requirements for Disclosure in Participant-Directed Individual Account Plans*, 75 Fed. Reg. 64,910, 64,946 (Oct.

20, 2010) (emphasis added); 29 C.F.R. § 2550.404c-1(d)(2)(iv). This carve-out is necessary, the Department of Labor explains, because:

> [T]he act of *limiting or designating investment options* which are intended to constitute all or part of the *investment universe of an ERISA 404(c) plan is a fiduciary function* which, whether achieved through fiduciary designation or express plan language, is not a direct or necessary result of any participant direction of such plan. Thus, . . . the plan fiduciary has . . . a residual fiduciary obligation to periodically evaluate the performance of such vehicles to determine, based on that evaluation, whether the vehicles should continue to be available as participant investment options.

*Final Regulation Regarding Participant Directed Individual Account Plans (ERISA Section 404(c) Plans)*, 57 Fed. Reg. 46906, 46924 n.27 (Oct. 13, 1992) (emphasis added); *see also* Brief for United States as Amicus Curiae at 14, *Gannett*, 142 S. Ct. 707 ("Section 1104(c) does not protect fiduciaries against claims for including imprudent funds on a plan menu."). And while the Fourth Circuit opined that "the Fifth Circuit [in *Schweitzer*] is generally correct that fiduciaries should not be liable for participant autonomy."),[3] *Stegemann*, 970 F.3d at 481, it "disagree[d] as to the effect of participant choice on a fiduciary's duties with respect to a defined contribution plan." (internal citations omitted)), concluding that Defendants' argument regarding participant choice must be made in the context of a Section 404(c) affirmative defense. *Id.* at 481-82. *But see Stegemann*, 970 F.3d at 482 ("In other words, as-yet-unproven participant choice does not abrogate a fiduciary's duties such that a plaintiff fails to state a claim where the plaintiff attacks the prudence of an option on a plan's menu.").

---

[3] *See also Stegemann.* at 474 ("Defendants also contend that, because the Plan was of the defined contribution type, individual participants could choose how to allocate their own funds, thereby absolving fiduciaries of any responsibility for not divesting imprudent funds that are frozen to new investments. Addressing a case with near-identical facts and claims earlier this year, the Fifth Circuit rejected the first argument (*Dudenhoeffer*) but accepted the second argument (participant-choice). We agree with the Fifth Circuit as to *Dudenhoeffer* but *disagree as to the effect of participant choice on a fiduciary's duties with respect to a defined contribution plan.*" (emphasis added) (internal citations omitted)).

Defendant's position is also at odds with other pronouncements of prior Fourth Circuit precedent that directly addresses whether Section 404(c) shields a fiduciary from liability based on a decision to select and maintain a fund.  For example, in affirming the District Court[4] in *DeFelice*, the Fourth Circuit observed that "this safe harbor provision does not apply to a fiduciary's decisions to select and maintain certain investment options within a participant-driven 401(k) plan," *DeFelice*, 497 F.3d at 418 n.3 (citation omitted));[5] and in this case, the  Fourth Circuit's reference to *DiFelice* seemed to again embrace that view. *See Stegemann*, 970 F.3d at 482 n.12 ("*DiFelice* supports our conclusion. In that case, we held that even where a plan comports with § 404(c), 'a fiduciary cannot free himself from his duty to act as a prudent man simply by arguing that other funds, which individuals may or may not elect to combine with a company stock fund, could theoretically, in combination, create a prudent portfolio.'").

Other courts have likewise concluded that Section 404(c) does not shield a fiduciary from liability based on the type of allegations in this case. For example, the Seventh Circuit has

---

[4] While this issue was not directly before the Fourth Circuit on appeal, the Court appeared to adopt the District Court's opinion on this point, discussed *infra.*, at n.4. *See DiFelice*, 497 F.3d at 418 n.3 ("Although the Plan comported with section 404(c) of ERISA, which limits the liability of fiduciaries for actions undertaken as a direct result of investment instructions given by participants, *see* 29 U.S.C. § 1104(c), this safe harbor provision does not apply to a fiduciary's decisions to select and maintain certain investment options within a participant-driven 401(k) plan.").

[5] In *DiFelice*, the plaintiffs argued that U.S. Airways breached its fiduciary duties by continuing to offer as an option a functional single stock fund after the company knew that a planned merger would no longer go forward, leading the company to file for bankruptcy approximately one year later. *Id.* at 766-67. The defendant U.S. Airways, like Defendants here, argued that Section 404(c) "shield[ed] it from liability because Plan participants made their own investment choices and were in sole control of whether they directed assets to the Company Stock Fund or any of the other Plan investment options." *DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 3d 758, 774-75 (E.D. Va. 2005). This Court, Judge Ellis presiding, concluded that U.S. Airways was not entitled to rely on Section 404(c) because it failed to satisfy the defense's "causation requirement" since U.S. Airways' decision to maintain the company stock fund was in no way contingent on the participants' acts, and "U.S. Airways' decision to retain the Company Stock Fund as an investment option, and the consequent loss to the Plan, cannot plausibly be viewed as 'result[ing] from [any] participant's or beneficiary's exercise of control.'" *Id.* (citation omitted) (alterations in original). The Court also concluded that the alleged breach was not the type of breach "envisioned by Congress" when it drafted the safe harbor provision, reasoning that if it were correct that a "participant's direction to invest a portion of his account in a given investment shielded the named fiduciary from liability for its imprudent selection and retention of that investment in the plan," then it would follow that "a fiduciary who offered only imprudent plan investment options" would be "shielded from liability by the mere fact that a plan participant decided to participate in the plan at all." *Id.*  In sum, the District Court concluded that "a breach of a fiduciary's duty to exercise prudence in selecting Plan investment options is not the type of breach for which § 404(c)(1) provides a defense." *Id.*

explicitly held that "[S]ection 404(c) thus creates a safe harbor only with respect to *decisions that the participant can make*. The choice of which investments will be presented in the menu that the plan sponsor adopts is not within the participant's power. It is instead a core decision relating to the administration of the plan and the benefits that will be offered to participants." *Howell*, 633 F.3d at 567 (emphasis added). And earlier this year, the Supreme Court in *Hughes v. Northwestern University*, although also not addressing § 404(c), reversed the Seventh Circuit for "relying on the participants' ultimate choice over their investments to excuse allegedly imprudent decisions by respondents." 142 S. Ct. 737, 742 (2022) ("If the fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty.").[6]

Here, Plaintiff's claims are based on Defendants' alleged breach of fiduciary duty by "failing to consider the surrounding facts and circumstances" when they decided to offer, maintain, and not close earlier "a single-stock fund with a relatively high degree of risk" as an option under the Plan. *Stegemann*, 970 F.3d at 477 n.9. More specifically, as Defendants point out, Plaintiff is not arguing that TEGNA stock is "poison" and that its inclusion on the menu of options was *per se* imprudent. [Doc. No. 133], at 5.[7] Rather, Plaintiff's claims rest on the premise that offering the TEGNA Stock Fund was imprudent for want of diversification and overconcentration; and that the Defendants breached their duties of prudence and diversification by failing to recognize and/or remediate that problem sooner. *See, e.g.*, [Am. Compl.], ¶¶ 9, 32, 53-54, 65-67, 84-86, 119-26. In that regard, Plaintiff claims that Defendants "breached their fiduciary duties by wrongfully allowing the Plan to hold massive amounts of TEGNA stock in disregard of their duty to diversify

---

[6] Though not addressing § 404(c), the Supreme Court also recently clarified that fiduciaries may breach their duty of prudence by failing to "properly monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015).

[7] Nor could Plaintiff make that argument given the Fourth Circuit's pronouncement on this issue. *See Tatum II*, 761 F.3d at 356 ("[L]egislative history and federal regulations clarify that the diversification and prudence duties do not prohibit a plan trustee from holding single-stock investments as an option in a plan that includes a portfolio of diversified funds.").

the Plan's investments" and by taking "no actions to diversify the Plan's assets and reduce the Plan's risky investment [in] TEGNA common stock," in violation of ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C). [Doc. No. 117], at 5; [Am. Compl.], ¶¶ 123-24. In sum, the Court concludes that the Fourth Circuit's decision did not eliminate Defendants' burden to show that offering, and continuing to offer the TEGNA Stock Fund in the investment menu for as long as they did, was prudent. *Cf. Stegemann*, 970 F.3d at 487 ("Of course, if the retention of the TEGNA Stock Fund as an investment option was itself imprudent, the defendants would be liable for breach of the prudence duty imposed by § 1104(a)(1)(B)." (Niemeyer, J., dissenting)). [8]

For the above reasons, Defendants are therefore not entitled to summary judgment based on its safe harbor defense, nor, as discussed below, will it defeat class certification.

### B. Plaintiff's Breach of Fiduciary Duty Claim

In addition to moving for summary judgment on its § 404(c) safe harbor affirmative defense, Defendants also move for summary judgment on the grounds that the timing and manner of the TEGNA Stock Fund was reasonable and thus did not constitute a fiduciary breach. [Doc.

---

[8] The Court recognizes that participant choice may have played a role in the Plan's overconcentration in the TEGNA Stock Fund since participants—like the named Plaintiff—may have decided to keep their holdings in the TEGNA Stock Fund, which in turn caused the high concentration of Plan assets in the single-stock fund. In other words, participants themselves may have in some sense exacerbated the diversification problem; and under that framing, it may be arguable based on the Fourth Circuit's pronouncements in this case with respect to the role of Section 404(c) that "intervening participant choice" might still be a relevant consideration at some point, even were there a fiduciary breach as Plaintiff claims. But notwithstanding that possible reading of the Fourth Circuit's opinion, the Court does not read the Fourth Circuit's actual decision and holding as abrogating the general rule that the "safe harbor provision does not apply to a fiduciary's decisions to select and maintain certain investment options within a participant-driven 401(k) plan." *DeFelice*, 497 F.3d at 418 n.3; *see also* 29 C.F.R. § 2550.404c-1(d)(2)(iv). In fact, the Fourth Circuit explicitly noted "that the § 1104(a)(1)(C) diversification claim here turns on fund selection" and that "investment volume alone is not the applicable test for a breach of duty here." *Stegemann*, 970 F.3d at 478 n.10 ("This is not to say that a fiduciary's fund selection will never need to account for whether participants have overconcentrated themselves in one fund."). There is also no need to decide whether § 404(c) would not in any event come into play, given the arguable lack of an actual "transaction," *i.e.*, Plaintiff did not specifically direct the Defendants to invest assets in the TEGNA Stock Fund post-spin off. Nor could she have as the TEGNA Stock Fund was frozen to any additional investments. *See* 29 C.F.R. 2550.404c-1(c)(1)(i) ("Sections 404(c)(1) and 404(c)(2) of the Act and paragraphs (a) and (d) of this section *apply only with respect to a transaction* where a participant or beneficiary has exercised independent control in fact with respect to the investment of assets in his individual account under an ERISA section 404(c) plan." (emphasis added)).

No. 124], at 18-21. At this stage, however, disputed material facts prevent the Court from resolving this question at the summary judgment stage. For instance, as Plaintiff correctly notes, the Parties have not filed any *Daubert* motions challenging the admissions of each other's experts. [Doc. No. 131], at 21. Therefore, the Court is left with one expert opining that a prudent fiduciary would have divested the TEGNA Stock Fund by July 2016 while another expert opines that an August 2018 divestment was prudent. This is a quintessential "battle of the experts, which should not be resolved at summary judgment." *Reyazuddin v. Montgomery Co., Md.*, 789 F.3d 407, 417 (4th Cir. 2015) ("At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." (quoting *Anderson*, 477 U.S. at 249)). Moreover, there are numerous other factual disputes about the process Defendants employed from 2015-2017. *See* [Doc. No. 131], at 2-11, 20-28. Therefore, the Court will deny Defendants' request for summary judgment on this alternative ground.

### C. Class Certification

Plaintiff seeks to certify this action as a class action for two ERISA causes of action. [Doc. No. 117], at 5-6. Plaintiff moves to certify the following class:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Gannett Co., Inc. 401(k) Savings Plan at any time from July 1, 2016, inclusive (the "Class Period"), and whose Plan accounts included investments in the TEGNA Stock Fund.

[*Id.*], at 6.

Having resolved Defendants' main objection to certification under the Rule 23(a) factors, the Court finds that Plaintiff has, by a preponderance of the evidence, satisfied Rule 23(a)'s

requirements of numerosity, typicality, commonality, and adequacy of representation.[9] Furthermore, the Court finds that class certification is appropriate under Rule 23(b)(1).

### 1. *Rule 23(a)*

#### i. Numerosity

Under Rule 23, a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). That said, "[n]o specified number is needed to maintain a class action." *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984). Instead, "the determination rests on the court's practical judgment in light of the particular facts of the case." *Lott v. Westinghouse Savannah River Co.*, 200 F.R.D. 539, 550 (D.S.C. 2000); *accord Gen. Tel. Co. of the Nw. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 330 (1980) ("The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations.").

Here, it is uncontested that the proposed Class has satisfied the numerosity requirement, and the Court finds that 12,000 potential class numbers satisfies this requirement.

#### ii. Commonality

To maintain a class action, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In order to satisfy the commonality requirement, the claims of all plaintiffs must depend upon a common contention, and they must all have suffered the same injury. *See Dukes*, 564 U.S. at 349. But commonality "does not require that all, or even most issues be common" and "even a single common question will do." *Sims v. BB&T Corp.*, 2017 WL 3730552, at *2 (M.D.N.C. Aug. 28, 2017) (quoting *Dukes*, 564 U.S. at 359); *see also Thomas*, 312 F.R.D.

---

[9] Defendants do not challenge Plaintiff's showing with respect to numerosity, commonality, and adequacy. [Doc. No. 122], at 5.

at 417 ("To satisfy [Rule 23(a)(2)], there need only be a single issue common to the class." (citations omitted)).

Defendants do not challenge whether Plaintiff has satisfied the commonality requirement. Moreover, the Court independently finds that there are numerous questions of law and fact common to the Proposed Class, including principally whether Defendants violated their fiduciary duties under ERISA by failing to remove the TEGNA Stock Fund at an earlier time, possibly resulting in a common injury to the members of the proposed class. *See e.g.*, *Boyd v. Convetry Health Care Inc.*, 299 F.R.D. 451, 458 (D. Md. 2014) (finding commonality where common question of "whether Defendants violated their fiduciary duties under ERISA by continuing to have the Plan invest in Coventry stock when they knew it was not a prudent investment").

   iii.   <u>Typicality</u>

Typicality requires that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (quoting *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982)); *see also* Fed. R. Civ. P. 23(a)(3). To satisfy this requirement, a "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of [her] own individual claim." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006). It is not necessary, however, to show that the movant be identically situated to other Class members to meet the typicality standard. *See In re Mills Corp.*, 257 F.R.D. at 105; *see also Broussard*, 155 F.3d at 344 (typicality requirements do not "require that members of the class have identical factual and legal claims in all respects"). Rather, the movant need only show that the disputed issues in this litigation are as central to its claims as to those of the other proposed

Class members. *See In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006) (citing *Broussard*, 155 F.3d at 338).

Here, Plaintiff's claim arises from the same events and course of conduct as the other Class members and the theory of liability is the same. *See BearingPoint*, 232 F.R.D. at 538. Nevertheless, Defendants oppose class certification on the grounds that § 404(c)'s safe harbor renders Plaintiff's claims atypical of the other class members. [Doc. No. 122], at 7-10. However, as the Court has already ruled that § 404(c) is not applicable at this stage, Defendants' objections to class certification on this ground are overruled.[10] The Court finds that the typicality requirement is satisfied here as Plaintiff brings this action in a § 502(a) representative capacity. *See Knight v. Lavine*, 2013 WL 427880, at *3 (E.D. Va. Feb. 4, 2013) ("The representative nature of a § 502(a)(2) suit makes it almost tautological that the named plaintiff's claim is typical of the rest of the class.") (citing *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70 (E.D. Va. 2006)); *see also Brieger*, 245 F.R.D. at 350 (finding that plaintiffs' "claims are typical of those of the putative class, principally because they seek relief on behalf of the Plan under section 502(a)(2) of ERISA for alleged fiduciary violations as to the Plan"); *Kanawi v. Bechtel Corp.*, 254 F.R.D.102, 110 (N.D. Cal. 2008) (same).

---

[10] Even if the Court found § 404(c) applicable at this stage, the Court would not find that the defense renders Plaintiff's claim atypical. *See Langebecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 314 (5th Cir. 2007) ("The fact that Mizell continued to trade in EDS stock after the company's adverse disclosures may signify an intraclass conflict of interest and may cut against his attempt to avert a § 404(c) defense, but it does not disable him from being a typical class representative."); *see also In re Nortel Networks Corp. Litig.*, 2009 WL 3294827, at *10 (M.D. Tenn. Sept. 2, 2009) (explaining that "[m]ost courts have found that, even when a plan has § 404(c) status, a § 404(c) affirmative defense does not defeat class certification, in part because it is applicable to many members of the class" (collecting cases)); *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 353 (N.D. Ill. 2007) ("Based on plaintiffs' claims on behalf of the Plan that defendants imprudently managed the Plan's investments, the Court is not persuaded that the question whether individual participants controlled their investments for section 404(c) purposes defeats typicality.").

iv.  Adequacy

Finally, under Rule 23(a), the movant must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is "a two-pronged inquiry, requiring evaluation of: (1) whether class counsel is qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether Plaintiff's claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate representation." *Lott v. Westinghouse Savannah River Co.*, 200 F.R.D. 539, 561 (D.S.C. 2000); *see also Falcon*, 457 U.S. at 158 (Rule 23(a)(4) requirement "raises concerns about the competency of class counsel and conflicts of interest."). In other words, Plaintiff must be willing and able "to take an active role in and control the litigation and to protect the interests of absentees." *Berger*, 257 F.3d at 479 (internal quotation marks omitted). And Plaintiff's counsel should likewise be zealous and competent. *Id.* (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)). To this end, courts should endeavor to uncover conflicts of interest between named plaintiffs and proposed class members, *Feder*, 429 F.3d at 130, while also keeping in mind that any such differences exist "only where those differences create [actual] conflicts between the named plaintiffs' and the class members' interests." *Berger*, 257 F.3d at 480 (emphasis added); *see also Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) ("[A] conflict will not defeat the adequacy requirement if it is 'merely speculative or hypothetical[.]'") (quoting *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 430 (4th Cir. 2003)).

Here, adequacy is uncontested by Defendants. The Court also finds that Plaintiff is an adequate representative of the class as she suffered losses based upon the same alleged misconduct by Defendants that harmed the Class as a whole, and she understands her obligations as a Class

Representative. [Doc. No. 117], at 12-13. Moreover, proposed class counsel is sufficiently qualified. [*Id.*], at 13-14.

### 2. *Rule 23(b)(1)*

In addition to meeting all of Rule 23(a)'s criteria, a case must also satisfy <u>one</u> of Rule 23(b)'s requirements before it can become certified. Here, Plaintiff moves for certification under Rule 23(b)(1), and, in the alternative, Rule 23(b)(3). Finding certification appropriate under Rule 23(b)(1), the Court does not address Plaintiff's requested certification under 23(b)(3).

Rule 23(b)(1) permits a class action to be maintained only if it can be concluded that prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). Several courts, including this one, have held that ERISA fiduciary breach claims are appropriate for Rule 23(b)(1) certification. *See, e.g.*, *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3rd Cir. 2009) ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class."); *DiFelice*, 235 F.R.D. at 80 ("Alleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(1). . . . [G]iven the derivative nature of suits brought pursuant to § 502(a)(2) on behalf of the Plan, ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class.") (internal quotation marks omitted).

22

For instance, in *Knight*, the Court, Judge O'Grady presiding, reasoned that this type of ERISA action satisfied 23(b)(1)(A) where multiple adjudications could result in "incompatible standards of conduct for the Defendants." 2013 WL 427880, at *4. Additionally, the Court in *Tatum* concluded that certification under Rule 23(b)(1)(B) would be appropriate where the named plaintiff brought "his claim on behalf of the Plan and [sought] recovery to the Plan" because the resolution of the case would "as a practical matter, be dispositive of the interests of the other participants claims on behalf of the Plan." *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 67 (M.D.N.C. 2008) (citation omitted); *see also Longo v. Trojan Horse Ltd.*, 208 F. Supp. 3d 700, 711-712 (E.D.N.C. 2016) ("The Advisory Committee Notes to Rule 23(b)(1)(B) state that 'an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust' is an appropriate action for certification under Rule 23(b)(1)(B).").[11]

Defendants argue that the Supreme Court's decision in *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008), which did not address class actions, renders representative section 502(a)(2) suits uncertifiable under Rule 23(b)(1). Although a few district courts, mostly in the Ninth Circuit, appear to have adopted that view, [Doc. No. 122], at 13, a substantial number of courts have rejected Defendants' expansive reading of *LaRue*. *See, e.g., In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 595 n.9, 604 n.22 (explaining that *LaRue* "broadens, rather than limits, the relief available under § 502(a)(2) in holding that a derivative fiduciary claim may be

---

[11] *See also Douglin v. GreatBanc Trust Co., Inc.*, 115 F. Supp. 3d 404, 412 (S.D.N.Y. 2015) ("[T]he structure of ERISA favors the principles enumerated under Rule 23(b)(1)(B), since the statute creates a 'shared' set of rights among the plan participants by imposing duties on the fiduciaries relative to the plan, and it even structures relief in terms of the plan and its accounts, rather than directly for the individual participants." (citation omitted)); *Smith v. Aon Corp.*, 238 F.R.D. 609, 618 (N.D. Ill. 2006) ("Monetary relief in a plan-wide action brought under ERISA section 502 is incidental, and flows from relief to the plan.").

brought on behalf of a 'plan,' even if the ultimate relief may be individualized" and that *LaRue* does not prevent certification under Rule 23(b)(1)); *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 105 n.12 (D. Mass. 2010) (rejecting defendants' argument that *LaRue* precluded class certification under Rule 23(b)(1)); *George v. Kraft Foods Global, Inc.*, 270 F.R.D. 355, 371 n.19 (N.D. Ill. 2010) (same), *vacated on other grounds by* 2011 WL 7063235 (N.D. Ill. July 19, 2011); *Kanawi v. Bechtel Corp.*, 254 F.R.D. at 108-09 (same).

The Court concludes, as other courts have, that *LaRue* does not preclude class certification under 23(b)(1). In that regard, Section 502(a) authorizes a Plan participant to recover for a breach of fiduciary duty. *See* 29 U.S.C. § 1132(a)(2); 29 U.S.C. § 1109. When the Supreme Court decided *Massachusetts Mutual Life Insurance Co. v. Russell*, 472 U.S. 134, 143 (1985), holding that an individual plan participant could not recover for their own loses, the common type of ERISA fund was a defined benefit plan. *LaRue*, 552 U.S. at 255. "Misconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan." *Id.* The Supreme Court in *LaRue*, however, recognized that for defined contribution plans, "fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive. Whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § 409," and therefore the statute allowed individual plan participants to bring § 502(a)(2) suits for fiduciary misconduct that caused a loss to their individual accounts. *Id.* at 255-56. That unnamed class members can also seek relief on their own does not defeat certification under Rule 23(b)(1) because whether the Defendants breached their fiduciary duties reaches all potential claims by class members. *See Kanawi*, 254 F.R.D. at 109 ("Of course,

24

a fiduciary's breaches can affect more than one defined contribution plan participant. In that situation, though, the proper approach is joinder of the affected participants or the certification of a class." (quoting *Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 266 (D. Mass. 2008))). In sum, the Supreme Court in *LaRue* merely expanded the scope of section 502(a)(2) suits to "authorize recovery for fiduciary breaches that impair the value of plan assets in a participants' individual account," *see* 552 U.S. at 256.

For the above reasons, the Court finds that the requirements for certification have been satisfied and that certification under Rule 23(b)(1) is appropriate.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Defendants' Motion for Summary Judgment [Doc. No. 123] be, and the same hereby is, **DENIED**; and it is further

**ORDERED** that the Plaintiff's Motion for Class Certification [Doc. No. 116] be, and the same hereby is, **GRANTED** and that the following class is certified pursuant to Rule 23(a) and Rule 23(b)(1):

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Gannett Co., Inc. 401(k) Savings Plan at any time from July 1, 2016, inclusive (the "Class Period"), and whose Plan accounts included investments in the TEGNA Stock Fund.

And it is further

**ORDERED** pursuant to Fed. R. Civ. P 23(g) that Gregory Y. Porter and Mark G. Boyko of Bailey & Glasser LLP and Robert A. Izard and Douglas P. Needham of Izard, Kindall & Raabe LLP. Be, and the same hereby are, appointed class counsel. It is further

**ORDERED** that Christina Stegemann is appointed as the representative for the class.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to all counsel of record.

November 17, 2022
Alexandria, Virginia

/s/
Anthony J. Trenga
Senior United States District Judge